# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN D. PETTINEO, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| GE MONEY BANK, | : | No. 10-2569 |
|     Defendant. | : | |

## MEMORANDUM

**Schiller, J.**                                                                                                                      **January 10, 2011**

      GE Money Bank denied Plaintiff John Pettineo's application for a credit card. Pettineo seeks equitable relief and damages under the Equal Credit Opportunity Act, alleging that this denial and a disclosure at the bottom of a form letter he received from the bank violate federal law. GE Money Bank moves for judgment on the pleadings. For the reasons that follow, this motion will be granted.

## I. BACKGROUND

      Plaintiff John D. Pettineo unsuccessfully tried to use his ShopNBC credit card in October of 2008. (Compl. ¶ 9.) After the card was denied, Pettineo called ShopNBC's customer service department and discovered that the card had been canceled for inactivity. (*Id*.) Pettineo learned that he could not reopen his old account, but would have to apply to open a new account. (*Id*.)

      Defendant GE Money Bank ("GE") underwrote Pettineo's ShopNBC credit card. (*Id*.; *see also* Answer ¶ 9.) Pettineo called GE's customer service department and orally applied for another ShopNBC credit card. (Compl. ¶ 10.) He received a written denial from GE on December 23, 2008. (*Id*. at ¶ 11.) In this letter, GE offered three reasons for the denial: (1) Pettineo's past due bankcards; (2) his revolving trades with past due balances; and (3) his bank revolving accounts with

past due balances. (Compl. Ex. A [GE Letter].) Pettineo alleges GE issued the denial "at least in part due to previous exercise of his rights under the Consumer Credit Protection Act." (*Id*. at ¶ 25.)

GE's letter to Pettineo features a disclosure reciting various non-discrimination policies the Equal Credit Opportunity Act ("ECOA") requires creditors to observe. (GE Letter.) The text of this disclosure reads as follows:

> ALL PERSONS TO WHOM THIS LETTER IS ADDRESSED:
> The federal equal credit opportunity act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract), because all or part of the applicant's income derives from any public assistance program, or because the applicant has in good faith exercised any right under the Consumer Protection Act. The federal agency that administers compliance with the Equal Credit Opportunity Act for the creditor identified on the front page of this letter is shown below.

(GE Letter.) The letter also provides contact information for the different government agencies which oversee the ECOA compliance of GE Money Bank, GE Capital Financial, Inc., and General Electric Capital Corporation. (*Id*.) The disclosure and federal agency contacts are located toward the bottom of the letter, typed in "a type set of eight (8) point or smaller," rendering them "practically illegible" to Pettineo. (Compl. ¶ 18.) Pettineo claims he "required magnification" to read the disclosure. (Pl.'s Resp. to Mot. to Dismiss 7.)

In his response, Pettineo observes that GE no longer issues the form letter he received. (*Id*. at 4.) In particular, Pettineo claims that GE has changed "the size of the font and print of the required notice of consumer's rights." (*Id*.) He contends that GE was aware the letter it sent to him was "dirty, or they would have never changed it." (*Id*.)

Pettineo seeks over $150,000 to compensate him for "severe anxiety attacks" he suffered due

to GE's conduct and his "pursuit of justice." (Compl. ¶ 25.) He also seeks an injunction barring GE from issuing "any further correspondence which fails to clearly and conspicuously reveal the disclosure language" at issue, punitive damages, and costs. (*Id.*) In addition, Pettineo requests "the opportunity to discuss potential class action status, remedy and treatment with competent counsel and [to] amend [his] Complaint accordingly under FRCP 23." (*Id.*)

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) permits motions for judgment on the pleadings after pleadings are closed and "within such time as not to delay the trial." Judgment on the pleadings is appropriate where the movant shows "that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (internal quotation marks and citation omitted). Undertaking this analysis, courts view the facts in the pleadings and inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005). Courts deciding a motion for judgment on the pleadings generally may consider indisputably authentic documents attached to the pleadings which are integral to the plaintiff's claims. *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004); *Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, Civ. A. No. 07-4798, 2010 WL 3825708, at *2 (E.D. Pa. Sept. 27, 2010).

The Court will construe Pettineo's complaint liberally, as he brings this action pro se. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Smith v. Sch. Dist. of Phila.*, 112 F. Supp. 2d 417, 423 (E.D. Pa. 2000).

**III.    DISCUSSION**

Pettineo's Complaint articulates two claims under the ECOA:  a claim for discrimination in denying his credit application, and a claim arising from GE's alleged failure to properly present required disclosure language in its denial letter.  Neither claim survives GE's motion for judgment on the pleadings.

   **A.    ECOA Discrimination**

The ECOA provides a right of action against creditors who discriminate against applicants "because the applicant has in good faith exercised any right" under the Consumer Credit Protection Act ("CCPA").  15 U.S.C. § 1691(a)(3).  Pettineo alleges GE denied him credit in part due to "previous exercise[s] of his rights" under the statute.  (Compl. ¶ 25.)  In support of this claim, Pettineo asserts that the U.S. Treasury Department's Office of Thrift Supervision released a November 2009 report demonstrating that GE's practices "disproportionately impacted protected groups as defined by the Equal Credit Opportunity, Fair Housing Act and [Office of Thrift Supervision] regulations."  (Pl.'s Resp. 12-13.)  Pettineo argues that he is entitled to discovery to determine if any of these individuals previously exercised "any right under the CCPA."  (Pl.'s Resp. 13.)  He also cites 15 U.S.C. § 1691(e)(j), which he contends grants him an absolute right to complete discovery as to GE's credit-granting standards.  (*Id.*).

To establish a prima facie case of discrimination under the ECOA, a plaintiff must establish that:  (1) he belongs to a protected class; (2) he applied for credit; (3) he was qualified for credit; and (4) credit was nevertheless denied.  *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 268 n.5 (3d Cir 2010).  Pettineo alleges that he applied for credit.  Allowing him the latitude afforded pro se litigants, the Court infers that Pettineo has also alleged membership in a protected

class by virtue of the prior CCPA actions he references in his Complaint and Response. However, Pettineo does not claim that he was qualified for credit or that he was denied credit despite being qualified to receive it. Pettineo thus fails to allege a prima facie case of discrimination under the ECOA.

The discovery provision Pettineo cites does not save this deficient claim from judgment on the pleadings. The relevant statute provides that "nothing in this subchapter shall be construed to prohibit the discovery of a creditor's credit granting standards under appropriate discovery procedures in the court or agency in which an action or proceeding is brought." 15 U.S.C. § 1691(e)(j). This provision does not empower litigants to pursue discovery notwithstanding their failure to plead a viable cause of action under the ECOA. The Court will therefore grant GE's motion with respect to Pettineo's discrimination claim.

      B.      **CCPA Disclosure Requirements**

Pettineo does not dispute that the content of the disclosure in GE's letter complies with the bank's obligations under federal law. (Pl.'s Resp. 3.) Rather, Pettineo contends that the letter did not effectively convey this disclosure information to him and others similarly situated because the font was too small. (*Id*. at 3, 7.) GE responds that the notice Pettineo received complies with the ECOA. Although the parties do not address Pettineo's standing to assert an ECOA claim on this ground, it is his lack of standing that is dispositive of this claim.

Federal courts have "an independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties." *Summers v. Earth Island Inst.*, 129 S. Ct. 1142, 1152 (2009) (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)). To demonstrate constitutional standing, plaintiffs must show: (1) injury in fact; (2) a causal link

between the injury and the conduct at issue; and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). As standing requirements for equitable and legal relief differ, the Court will address Pettineo's claims for injunctive and monetary relief separately.

### 1. *Standing to pursue injunctive relief*

Standing to bring claims for injunctive relief requires a showing that the plaintiff faces "a real and immediate threat that he would again suffer the injury." *Smith v. Chrysler Fin. Corp.*, Civ. A. No. 00-6003, 2004 WL 3201002, at *4 (D.N.J. Dec. 30, 2004) (citing *Brown v. Fauver*, 819 F.2d 395, 400 (3d Cir. 1987)). Pettineo requests an injunction "prohibiting any further correspondence which fails to clearly and conspicuously reveal the disclosure language required under the ECOA and Regulation B in any credit denial by Defendant." (Compl. ¶ 25.) Yet Pettineo also asserts that GE no longer uses the form letter he received and now issues a letter with a more conspicuous disclosure statement. (Pl.'s Resp. 4, 8.) Pettineo does not allege that this new GE letter violates the ECOA. He thus lacks standing to seek this injunction.

### 2. *Standing to seek damages*

Pettineo also lacks standing to seek damages arising from the defects he identifies in GE's letter, as he fails to plead an injury arising from GE's alleged failure to provide an ECOA disclosure in easily readable type. Under the ECOA's disclosure requirements, creditors must provide credit applicants with a notice describing the statute's anti-discrimination provisions. 12 C.F.R. § 202.9(b)(1). A plaintiff may recover actual and punitive damages for a creditor's violations of the ECOA, including its notice provision. 12 C.F.R. § 202.16(b); *see also Sayers v. Gen. Motors Acceptance Corp.*, 522 F. Supp. 835, 840 (W.D. Mo. 1981). Pettineo identifies no such damages.

Pettineo's claim arises from "mental anguish" which he attributes to his "pursuit of justice incurred in presenting this claim" and to GE's denial of credit. (Compl. ¶ 25.) Pettineo does not allege a causal connection between GE's denial of credit and the inadequate disclosure in the letter he received. Mental distress may serve as the basis for an action for compensatory damages in a lawsuit alleging violations of the ECOA's notification requirements, even if it does not cause the plaintiff any out-of-pocket loss. *See Sayers*, 522 F. Supp. at 841(citing *Shuman v. Standard Oil Co.*, 453 F. Supp. 1150 (N.D. Cal. 1978)). Nevertheless, constitutional standing demands a showing that the plaintiff's injury is "fairly traceable" to the defendant's conduct. *See Pa. Prison Soc. v. Cortes*, 622 F.3d 215, 228 (3d Cir. 2010). Pettineo fails to plead to any causal link between his mental anguish and the size of the font in GE's letter.

Elsewhere in his Complaint, Pettineo alleges that GE's use of a form letter which included information regarding GE's sister companies may inhibit credit applicants from pursuing claims against GE as these companies have nothing "to do with the action(s) of the Defendant GE." (Compl. ¶ 20.) He also fails to link this conduct to an injury in fact, as he does not allege that this information either inhibited his own ability to vindicate his rights against GE or contributed to his distress. These allegations thus cannot support Pettineo's standing to pursue disclosure claims under the ECOA.

The only injury which the Court may infer is causally linked to the alleged deficiencies of GE's letter — the emotional toll this litigation has taken on Pettineo — arises from his own lawsuit. The costs of investigating and prosecuting a substantive claim do not confer standing to assert that claim. *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 301 (2008). Pettineo observes that he required a magnifying device to read the disclosure. (Pl.'s Resp. 7.)

He does not, however, claim that the use of this device contributed to his injuries. Pettineo's failure to put forth an injury in fact causally connected to GE's conduct is fatal to his ECOA disclosure claims.

## IV. CONCLUSION

The Court will grant GE's motion for judgment on the pleadings. However, as it is feasible that Pettineo may amend his Complaint to state viable claims, the Court will dismiss the action without prejudice. An Order consistent with this Memorandum will be docketed separately.