# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN D. PETTINEO, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| GE MONEY BANK, | : | No. 10-2569 |
| Defendant. | : | |

## MEMORANDUM

Schiller, J.                                                                                                          March 29, 2011

Defendant GE Money Bank ("GE") sent Plaintiff John Pettineo a letter denying his application for a credit card. Pettineo alleges that this denial and a disclosure at the bottom of the GE form letter he received violate the Equal Credit Opportunity Act ("ECOA"). GE's motion to dismiss and Pettineo's response are presently before the Court. For the reasons that follow, GE's motion will be granted in part and denied in part.

## I.     BACKGROUND

Pettineo tried to use his ShopNBC credit card in October of 2008. (Am. Compl. ¶ 9.) The card was denied. (*Id*.) Pettineo called ShopNBC and discovered that the card had been canceled for inactivity. (*Id*.) He could not reopen his account, but had to apply for a new credit card. (*Id*.)

GE underwrote Pettineo's ShopNBC card. (*Id*.) Pettineo applied over the phone with GE's customer service department for another ShopNBC credit card. (*Id*. ¶ 10.) He received a written denial from GE on December 23, 2008. (*Id*. ¶ 11.) In this letter, GE offered three reasons for the denying Pettineo credit: (1) past due bankcards; (2) revolving trades with past due balances; and (3) bank revolving accounts with past due balances. (Am. Compl. Ex. A [GE Letter].) Pettineo alleges

he was qualified for credit, but that GE denied his application because he previously sued under various federal statutes, including the Fair Debt Collection Practices Act, the Fair Credit Reporting Act, and the ECOA. (Am. Compl. ¶¶ 25-26.)

GE's letter to Pettineo features a disclosure reciting non-discrimination policies the ECOA requires creditors to observe. The text of this disclosure reads:

> ALL PERSONS TO WHOM THIS LETTER IS ADDRESSED:
> The federal equal credit opportunity act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract), because all or part of the applicant's income derives from any public assistance program, or because the applicant has in good faith exercised any right under the Consumer Protection Act. The federal agency that administers compliance with the Equal Credit Opportunity Act for the creditor identified on the front page of this letter is shown below.

(GE Letter.) The letter provides contact information for the different government agencies which oversee the ECOA compliance of GE, GE Capital Financial, Inc., and General Electric Capital Corporation. (*Id*.) A paragraph at the top of the letter states that "[r]equests for a copy of your credit report should be sent to the credit reporting agency listed in the bottom portion of this notice." (*Id*.) The letter includes contact information for Equifax Credit Information Services, which it identifies as the source of information used by GE in reaching its decision to deny Pettineo credit. (*Id*.)

The disclosure and federal agency contacts are located toward the bottom of the letter, typed in "a type set of eight (8) point or smaller," rendering them "practically illegible" to Pettineo. (Am. Compl. ¶ 18.) Pettineo claims he ultimately had to use "magnification" to read the disclosure. (*Id*. ¶ 23.) However, at the time he received the letter, he did not read the disclosure because he assumed it was "meaningless print that had no bearing or significance" due to its small size. (*Id*. ¶ 22.) This

section of the letter includes a notice informing Pettineo that he had the right to request a free copy of Equifax's report within sixty days of his receipt of GE's letter. (GE Letter.)

Pettineo claims he was unaware of his right to request a free credit report because of the notice's small type. (Am. Compl. ¶ 24.) When he realized he had a right to request a free credit report, the deadline had passed. (*Id.*) Pettineo also alleges he was "unaware that he was a member of a protected class" under the ECOA because he initially did not read the disclosure. (*Id.* ¶ 22.)

Pettineo seeks over $150,000 to compensate him for "severe anxiety attacks" he suffered due to GE's conduct. (*Id.* ¶ 45.) He also seeks an injunction barring GE from issuing "any further correspondence which fails to clearly and conspicuously reveal the disclosure language" at issue, punitive damages, and costs. (*Id.*) Additionally, Pettineo requests "the opportunity to discuss potential class action status, remedy and treatment with competent counsel and [to] amend [his] Complaint accordingly under FRCP 23." (*Id.*)

In addition to the letter Pettineo received from GE in December of 2008, Pettineo attaches a second letter to his Amended Complaint. This letter, dated October 14, 2008, informs Pettineo that GE and Wal-Mart had reduced the available credit on his Wal-Mart account. (Am. Compl. Ex. B. [Wal-Mart Letter].) This letter does not include the disclosures in fine print on its face, but recites them in a uniform font size on its reverse. (*Id.*) Pettineo asserts that this second letter complies with the ECOA's notice requirement, and speculates that GE's apparent use of compliant and non-compliant form letters simultaneously demonstrates that GE may continue to use letters that do not effectively convey the ECOA disclosure. (Am. Compl. ¶¶ 38, 40-41.)

3

## II. STANDARD OF REVIEW

The Federal Rules of Civil Procedure mandate dismissal of complaints which fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Court accepts "as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom," viewing them in the light most favorable to the non-moving party. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). The Court will construe Pettineo's complaint liberally, as he brings this action pro se. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Smith v. Sch. Dist. of Phila.*, 112 F. Supp. 2d 417, 423 (E.D. Pa. 2000).

The Third Circuit applies a two-part analysis to determine whether claims should survive a Rule 12(b)(6) motion to dismiss. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The Court must first separate the factual and legal elements of each claim, accepting well-pleaded facts as true but disregarding legal conclusions. *See id*. Second, the Court must determine whether the facts alleged in the complaint are sufficient to show a plausible claim for relief. *See id*. at 211 (citing *Phillips*, 515 F.3d at 234-35). If the well-pleaded facts "do not permit the court to infer more than the mere possibility of misconduct," the Court should dismiss the complaint for failure to state a claim. *See Jones v. ABN Amro Mortg. Grp.*, 606 F.3d 119, 123 (3d Cir. 2010).

Courts look to the complaint and attached exhibits in ruling on a motion to dismiss. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2008); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). Courts may also consider undisputedly authentic documents attached to a defendant's motion to dismiss if the plaintiff's claims are based on those

documents, matters of public record, and records amenable to judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007); *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004).

**III.  DISCUSSION**

Pettineo's First Amended Complaint presents two claims under the ECOA: a discrimination claim and a claim arising from GE's allegedly deficient disclosure notice. Pettineo pleads a plausible discrimination claim under the ECOA. However, the Court will dismiss his claim arising from the small font in GE's letter.

**A.  ECOA Discrimination**

To establish a prima facie case of discrimination under the ECOA, a plaintiff must establish that: (1) he belongs to a protected class; (2) he applied for credit; (3) he was qualified for credit; and (4) credit was nevertheless denied. *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 268 n.5 (3d Cir 2010). Pettineo alleges membership in a protected class under § 1691(a)(3), which prohibits discrimination against plaintiffs who have in good faith exercised a right under the Consumer Credit Protection Act ("CCPA"). 15 U.S.C. § 1691(a)(3); *see also Lewis v. ACB Bus. Servs.*, Inc., 135 F.3d 389, 406 (6th Cir. 1998). The parties also do not dispute that Pettineo applied for credit. However, GE argues that Pettineo has failed to allege facts supporting his allegations that he was qualified for credit or that he was denied credit because of his litigation history. (Def.'s Mot. to Dismiss 15.)

ECOA claims trigger a burden-shifting analysis similar to the framework applied in Title VII cases under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Anderson v.*

*Wachovia Mortg. Corp.*, 621 F.3d 261, 268 n.5 (3d Cir. 2010) (describing the Third Circuit's application of "prima facie tests for ECOA claims that mirror the elements of the *McDonnell Douglas* prima facie test."); *see Chiang v. Schafter*, 2008 WL 3925260, Civ. A. No. 00-04, 2008 WL 3925260, at *21 (D.V.I. Aug. 20, 2008) (applying Title VII burden-shifting analysis to ECOA claim). The *McDonnell Douglas* standard does not require a plaintiff to prove all elements of a prima facie case to survive a motion to dismiss. *Cronin v. Visiting Nurses Ass'n of St. Luke's Hosp.*, Civ. A. No. 08-5215, 2009 WL 3152172, at *7 (E.D. Pa. Sept. 30, 2009). The burden-shifting analysis sets forth evidentiary hurdles, not pleading requirements. *Id*. Pettineo need only plead sufficient facts to raise a reasonable expectation that discovery will reveal evidence of these elements. *See Artz v. Cont'l Cas. Co.*, 720 F. Supp. 2d 706, 711 (E.D. Pa. 2011) (quoting *Phillips*, 515 F.3d at 234).

Pettineo alleges that he was qualified for credit. (Am. Compl. ¶ 26.) He also claims that the information GE used to determine his creditworthiness was inaccurate. (*Id*.) These allegations satisfy the third element of an ECOA claim for the purposes of a motion to dismiss. Pettineo likewise satisfies the fourth element of this claim by alleging that GE denied him credit due to "previous exercise[s] of his rights" under the statute. (*Id*. ¶ 25.) The Court will therefore deny GE's motion with respect to Pettineo's ECOA discrimination claim.

### B. CCPA Disclosure Requirements

Pettineo does not take issue with the content of the disclosure in GE's letter. (Pl.'s Resp. to Def.'s Mot. to Dismiss Pl.'s First Am. Compl. [Pl.'s Resp.] 3.) Rather, Pettineo contends that the letter did not effectively convey this disclosure information to him and others similarly situated because the font was too small. (*Id*.) Specifically, Pettineo asserts that the body of the

letter "overshadowed" the disclosure because the disclosure was printed in much smaller type than the rest of the letter. (*Id*. at 6-7.)

Pettineo also argues that GE inhibited consumers from contacting oversight agencies by including oversight information for three separate, similar-sounding GE sister-companies: GE Money Bank, GE Capital Financial, Inc., and General Electric Capital Corporation. (*Id*. at 19.) Each of these companies has a separate oversight agency contact listed on the letter. (GE Letter.) Pettineo was thus unsure whether GE Money Bank "was either just a self-proclaimed pseudonym for General Electric Company . . . to insulate [it] from any and all wrongdoing . . . or possibly a company merely involved in fraud in the inducement." (*Id*. at 20.)

      1.    *ECOA notice requirements*

The ECOA authorizes the Federal Reserve Board to issue regulations implementing the statute, including its notice provisions. 15 U.S.C. § 1691b; *see also* 12 C.F.R. § 202.1. These regulations, known collectively as Regulation B, mandate that creditors must provide required disclosures "in a clear and conspicuous manner . . . in a form the applicant may retain." 12 C.F.R. § 202.4(d). The Federal Reserve's Official Staff Interpretations clarify that the "clear and conspicuous" standard "requires that disclosures be presented in a reasonably understandable format in a way that does not obscure the required information. No minimum type size is mandated, but the disclosures must be legible, whether typewritten, handwritten, or printed by computer." 12 C.F.R. § 202 Supp. I; *see also Williams v. MBNA Am. Bank., N.A.*, 538 F. Supp. 2d 1015, 1021 (E.D. Mich. 2008).

In the absence of other authority, GE urges the Court to adopt the *Williams* court's conclusion that the "clear and conspicuous" standard requires merely that a creditor provide

7

"visible" disclosures. (Def.'s Mot. to Dismiss 9-10.) This reasoning follows interpretations of a "clear and conspicuous" standard found in the Consumer Leasing Act. *Williams*, 538 F. Supp. 2d at 1021. The *Williams* analysis focuses solely on the "mode of presentation, not the degree of comprehension. So long as a disclosure is visible, it has satisfied the clear and conspicuous requirement . . . even if it is incomprehensible to the average consumer." *Id*. at 1022.

Pettineo suggests that the Court look instead to cases involving the Fair Debt Collection Practices Act ("FDCPA"), which analyze consumer communications under a "least sophisticated consumer" standard. *See Ellis v. Solomon and Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010). Pettineo suggests that decisions interpreting the FDCPA offer a better source of authority in ECOA cases than the Consumer Leasing Act does, as the FDCPA and ECOA share a common consumer-protection purpose under the CCPA. (Pl.'s Resp. 5.) Pettineo also contends that the Court may not determine whether GE's notice complies with the ECOA on a motion to dismiss, as this matter is "a question of fact for the jury to determine." (*Id*. at 4.)

Whether a creditor is in compliance with the ECOA's notice requirements is a question of law. *Ricciardi v. Ameriquest Mortg. Co.*, Civ. A. No. 03-2995, 2004 WL 739965, at *3 (E.D. Pa. Mar. 15, 2004); *see also Jarzyna v. Home Props., L.P.*, Civ. A. No. 10-4191, 2011 WL 382367, at *4 (E.D. Pa. Feb. 4, 2011) (citing *Wilson*, 225 F.3d at 353 n.2) (noting that whether notice satisfies FDCPA's "least sophisticated consumer" standard is a question of law). Turning to the merits of Pettineo's argument, the Court concludes that Pettineo has failed to present a viable claim for violation of the ECOA's notice requirement, even under the FDCPA's least sophisticated consumer standard.

## 2. *The least sophisticated consumer*

The FDCPA standard Pettineo advocates does not require that creditors style their consumer correspondence in a manner comprehensible to everyone. Rather, it assumes that even the least sophisticated consumer possesses an elementary level of understanding and a willingness to read creditor communications carefully. *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354-55 (3d Cir. 2000); *Rogers v. Capital One Servs., LLC*, Civ. A. No. 10-398, 2011 WL 873312, at *11 (D. Conn. Feb. 19, 2011). The standard "protects naive consumers, [but] it also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness" in a court's analysis. *Greer v. Shapiro & Kreisman*, 152 F. Supp. 2d 679, 684 (E.D. Pa. 2001) (quoting *Wilson*, 225 F.3d at 354-55).

GE's notice effectively communicates the required disclosure information. For example, with respect to Pettineo's right to receive a free copy of his credit report, the letter includes directions for obtaining a free copy of his credit report from the credit reporting agency at the top of the page in relatively large font. (*See* GE Letter.) Pettineo's confusion as to GE's oversight agency likewise does not constitute an actionable ECOA violation. Even a gullible, naive, or unsophisticated consumer could quickly determine which agency administered compliance for which GE company simply by contacting one of the oversight agencies listed. These issues thus do not give rise to a claim for violation of the ECOA's notice provision. Finally, Pettineo's decision that the disclosure information was unimportant because it was printed in relatively small font is inconsistent with the least sophisticated consumer standard's presumption that consumers read such notices with care. *See Wilson*, 225 F.3d at 354-55. The Court will therefore dismiss Pettineo's claims with respect to the ECOA's disclosure requirements.

### C. Punitive Damages and Attorneys' Fees

Pettineo's Amended Complaint seeks punitive damages under the ECOA. (Am. Comp. ¶ 45.) GE contends that Pettineo's "conclusory allegations of extreme and outrageous conduct" are insufficient to support this punitive damages claim. (Def.'s Mot. to Dismiss 16-17.) The ECOA permits aggrieved applicants to recover punitive damages of $10,000 or less, regardless of proof of actual damages, if the defendant's conduct was wanton, malicious, or oppressive, or if the defendant acted in reckless disregard of the law. 15 U.S.C. § 1691e(b). The Court may fairly infer from Pettineo's Amended Complaint that he alleges GE intentionally denied him credit because he has previously exercised his rights under the CCPA. These allegations are sufficient to sustain Pettineo's punitive damages claim on a motion to dismiss.

GE also argues that Pettineo is not entitled to attorneys' fees. (Def.'s Mot. to Dismiss 17.) Pettineo's Amended Complaint requests attorneys' fees "when Plaintiff need engage counsel" and, potentially, "to discuss . . . class action status, remedy and treatment." (Am. Compl. ¶ 45.) However, Pettineo has not yet engaged counsel. Because Pettineo has neither engaged an attorney nor actually requested an award of attorneys' fees, it is premature to determine whether he may ultimately offer a plausible claim for fees if he secures counsel.

## IV. CONCLUSION

The Court will grant GE's motion with respect to Pettineo's claims arising from the ECOA's disclosure requirements. Because Pettineo has alleged plausible claims for discrimination and punitive damages, the Court will permit these claims to proceed. An Order consistent with this Memorandum will be docketed separately.